IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JACOB M.,[1]

        Plaintiff,

v.

COMISSIONER,
Social Security Administration,

        Defendant.

No. 6:17-CV-02000-MC

OPINION AND ORDER

**MCSHANE, Judge**:

Plaintiff seeks judicial review of the Commissioner of Social Security's decision denying his application for Supplemental Security Income and Disability Insurance Benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Plaintiff filed his application for Supplemental Security Income and Disability Insurance Benefits on January 21, 2014. In both applications, Plaintiff alleged disability beginning on August 5, 2013. After a hearing, an Administrative Law Judge determined that Plaintiff was not disable under the Social Security Act. Plaintiff now contends that the decision was in error. The Court agrees. Because the Commissioner of Social Security's decision is not supported by substantial evidence, and because the record requires additional development, the Commissioner of Social Security's decision is REVERSED and the case REMANDED for further proceedings consistent with this Order.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in the case.

Page 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

A reviewing court shall affirm the decision of the Commissioner of Social Security ("Commissioner") if her decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the Administrative Law Judge's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

**DISCUSSION**

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden then shifts to the Commissioner for step five. 20 C.F.R. § 404.1520 (2012). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work after considering the claimant's Residual Functional Capacity ("RFC"), age, education, and work experience. *Id.*

In the present case, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled. Tr. 21.[2] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 5, 2013, the alleged onset date of disability. Tr. 23. At step two, the ALJ

---

[2] "Tr." refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

determined Plaintiff had the following severe impairments: degenerative disc disease of the thoracic and lumbar spines; tobacco use disorder (in combination with Plaintiff's degenerative disc disease); morbid obesity; bipolar disorder; borderline intellectual functioning; and a conversion disorder. Tr. 23. He also determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24.

Before moving to step four, the ALJ found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), adding that Plaintiff could frequently climb ramps and stairs, never climb ladders, ropes, or scaffolds, and frequently stoop, kneel, crouch, and crawl. Tr. 26. He also limited Plaintiff to short and simple instructions, occasional changes in routine, and simple work-related judgments and decisions. Tr. 26. Next, at step four, the ALJ concluded Plaintiff was unable to perform any past relevant work. Tr. 29. Nevertheless, at step five, the ALJ found that Plaintiff could perform several jobs existing in substantial numbers in the national economy, including electronic worker, assembler of electronic accessories, and basket filler. Tr. 30. In doing so, he relied on the testimony of a vocational expert and considered Plaintiff's age, education, work experience, and RFC. Tr. 30-31. Finally, having identified jobs existing in substantial numbers in the national economy which Plaintiff could perform, the ALJ concluded that Plaintiff was not disabled and therefore did not qualify for benefits. Tr. 31.

Plaintiff challenges the ALJ's determination on three grounds.[3] First, Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discrediting his subjective symptom testimony. Pl.'s Br. 21-24, ECF No. 13. Second, Plaintiff

---

[3] Plaintiff also argues that the ALJ erred at step two of the analysis by failing to find that her cervical spine impairment amounted to a severe impairment but concedes that this was harmless error because the ALJ was required to consider *all* medically terminable impairments and functional limitations—including those from his cervical impairment—when formulating the RFC. *See Lewis v. Asture*, 498 F.3d 909, 911 (9th Cir. 2007).

argues that the ALJ erred in evaluating the medical opinion evidence. Pl.'s Br. 14-17. Finally, Plaintiff argues that the ALJ failed to identify legally sufficient bases for rejecting "other" medical source opinions. Pl.'s Br. 17-21. The Court addresses each argument in turn.

   I.  <u>Subjective Symptom Testimony</u>

Plaintiff first argues the ALJ failed to provide clear and convincing reasons supported by substantial evidence for rejecting his symptom testimony. Pl.'s Br. 21-24. As the ALJ recognized, Plaintiff suffered from thoracic, lumbar, and cervical spine impairments, as well as a conversion disorder.[4] Tr. 23-24. Plaintiff testified that he was "unable to sit or stand for long periods of time" and could not walk more than 100 feet without needing to stop and rest. Tr. 312, 317. He added that he was unable to "lay down without having pain" and struggled to fall asleep due to persistent pain. Tr. 313. Plaintiff also stated that he required assistance with personal care when pain became "unmanageable" and, because of his difficulties standing for extended periods, received regular assistance with meal preparation and house work. Tr. 313-14. Finally, Plaintiff reported that, since the beginning of 2015, he had experienced constant weakness and intermittent tingling in his right upper extremity, as well as persistent numbness, tingling, and pain in his legs. Tr. 67.

The ALJ found Plaintiff's physical symptom testimony to not be credible for three reasons. First, the ALJ noted inconsistencies between Plaintiff's allegations and the objective medical evidence. Tr.27. Although he conceded that imaging showed "some degenerative changes of a moderate to severe nature" in the thoracic spine and "mild degenerative disc disease of the lumbar spine," the ALJ opined that other imaging showed only "mild multilevel degenerative changes

---

[4] "A 'conversion disorder' is one form of a [somatic symptom] disorder – a psychiatric syndrome where the patient's symptoms suggest medical disease, but no demonstrable pathology accounts for the [physical] symptoms. A conversion disorder is specifically characterized by a loss of, or change in, motor or sensory functioning resulting from psychological factors. The physical symptoms cannot be explained medically. Patients lack voluntary control of their symptoms." *Herring v. Veterans Admin.*, 1996 WL 32147, at *1 n.1 (9th Cir. 1996) (unpublished) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 445 (4th ed. 1994)).

Page 4 – OPINION AND ORDER

without neurological involvement." Tr. 27. He further reasoned that Plaintiff "generally" had "full range of motion in all extremities and normal strength, reflexes, and motor function," as well as "normal gait [and] sensation." Tr. 27. Second, the ALJ determined that Plaintiff's course of treatment, which he described as limited to "physical therapy and prescription medications," was "very conservative." Tr. 27. Finally, the ALJ found that Plaintiff's activities of daily living were also inconsistent with his claimed limitations. Tr. 27. In particular, he opined that Plaintiff's ability to walk for "20 minutes a day" and "perform adequate self-care, prepare simple meals, do household chores and go out to the store" indicated a higher level of function. Tr. 27.

An ALJ may only reject testimony regarding the severity of a claimant's symptoms if she offers "clear and convincing reasons" supported by "substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1993)). In assessing credibility, the ALJ may consider a wide range of factors, including "ordinary techniques of credibility evaluation," as well as the claimant's daily activities, objective medical evidence, treatment history, and inconsistencies in testimony. *Molina v. Astrue*, 674 F.3d 1104, 1163 (9th Cir. 2012) (citation omitted). When reaching an ultimate conclusion on the credibility of specific testimony, however, the ALJ must be "sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.3d 586, 592 (9th Cir. 2009) (original emphasis and ellipses omitted).

Here, the ALJ erred in rejecting Plaintiff's symptom testimony. The most glaring flaw in the ALJ's analysis stems from his omission of any discussion pertaining to Plaintiff's cervical

spine impairment and symptoms. In addition to the thoracic and lumbar spine conditions addressed by the ALJ, Plaintiff was treated for several cervical spine-related conditions, including a herniated cervical disk, severe spinal stenosis in the cervical region, and cervical disk degeneration. Tr. 604. These conditions were distinct from Plaintiff's other back impairments and gave rise to a distinct body of symptoms. *See* tr. 66. Plaintiff, for instance, reported persistent neck and leg pain, as well as muscle weakness, numbness in his right upper extremity, and difficulty walking. Tr. 602, 604, 617. He received physical therapy and, when that was unsuccessful, a cervical diskectomy and fusion. Tr. 604. Importantly, after some initial improvement, Plaintiff's symptoms remained unresolved after the surgical intervention. Tr. 594-97, 617-30, 668. Although an ALJ's interpretation of the record is generally entitled to deference, she may not reject symptom testimony without offering a clear rationale for doing so. Unfortunately, without any discussion of Plaintiff's cervical impairment, it is unclear whether those portions of Plaintiff's symptom testimony were rejected on permissible grounds.

The ALJ also failed to consider the role played by Plaintiff's conversion disorder. As noted above, a conversion disorder is a phenomenon in which a person actually and subjectively experiences symptoms without a known or clinically verifiable medical cause. Although the ALJ here classified Plaintiff's conversion disorder as a severe impairment, tr. 23, he otherwise ignored the same and, as addressed in Part II, the precise nature and impact of Plaintiff's conversion disorder is unclear from the record. The ALJ was, nevertheless, required to at least consider the possible effects of Plaintiff's conversion disorder on his alleged symptoms. *See Nowling v. Colvin*, 813 F.3d 1110, 1116 (8th Cir. 2016) (remanding for consideration of the extent to which a "conversion disorder rather than a lack of credibility might explain the absence of objective medical support for her symptoms"); *Carradine v. Barnhart*, 360 F.3d 751, 754-56 (7th Cir. 2004)

(same); see also *Hanes v. Colvin*, 651 F. App'x 703, 707 (9th Cir. 2016) (Watford, J., dissenting) (citing *Carradine*, 360 F.3d at 754-55) ("The possibility that [plaintiff] suffers from a conversion disorder isn't grounds for concluding that she's exaggerating her pain, only that her pain may be at least partly psychological in origin."). Indeed, by noting the conversion disorder in the first place, the ALJ implicitly acknowledged that the origin of Plaintiff's symptoms could have been psychological in nature. It would make little sense if, as occurred here, an ALJ could make this finding and then rely upon a lack of corroborating clinical evidence to reject a claimant's symptom testimony. The ALJ's credibility determination was therefore in error.

Further, in so far as the ALJ attempted to address Plaintiff's thoracic and lumbar spine-related symptoms in isolation, his findings were also in error. First, the ALJ's conclusion that Plaintiff's symptom testimony was contradicted by the medical evidence does not meet the substantial evidence threshold. The ALJ reasoned that Plaintiff exhibited "full range of motion in all extremities and normal strength, reflexes, and motor function," as well as "normal gait [and] sensation." Tr. 27. Although the record does reflect that *some* of these measurements occasionally fell within the normal range, *see, e.g.*, tr. 358, 372, 430, 441, 535, such instances were far outweighed by those reflecting a limited range of motion, weakness, antalgic gate, and/or loss of sensation, *see, e.g.*, tr. 352, 356, 434, 436-38, 441, 484, 515, 530, 594-96, 617-30, 634-35, 651, 668-70, 720, 729. Those instances cited by the ALJ, moreover, occurred almost exclusively during limited periods of improvement from late 2013 to early 2015 and ignore Plaintiff's later regression—including as a result of his cervical impairment and, perhaps, conversion disorder. It is common for a claimant to experience "[c]ycles of improvement and debilitating symptoms" and "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months

Page 7 – OPINION AND ORDER

or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Second, the ALJ erred in finding that Plaintiff's course of treatment was "very conservative." Tr. 27. Plaintiff religiously scheduled office visits with his primary care provider, *see generally* tr. 356-450, 513-52, 594-616, 641-718, and consistently attended physical therapy sessions, *see generally* tr. 356-427, 617-40. He was admitted to the emergency department once for complications related to his thoracic spine impairment, tr. 451-76, as well as once for his cervical spine impairment and conversion disorder, tr. 558-85. Plaintiff was prescribed and took a litany of prescription pain medications and, when physical therapy and pharmacological interventions failed or produced intolerable side effects, underwent an invasive surgical procedure to address his cervical spine-related symptoms. *See* tr. 588-593 (noting in part that Plaintiff had "maximized conservative treatment"). In an attempt to obtain relief, Plaintiff even changed his primary care provider and sought a second opinion when his back pain and muscle weakness continued to worsen after the surgery. *See* tr. 644. It is unclear what more Plaintiff could have done to treat his symptoms and the ALJ offered no explanation.

Finally, the ALJ erred in finding that Plaintiff's symptom testimony was inconsistent with his activities of daily living. The ALJ opined that Plaintiff could "perform adequate self-care, prepare simple meals, do household chores, and go out to the store," as well as walk "20 minutes a day for exercise." Tr. 27. None of these activities are inconsistent with Plaintiff's testimony or indicate that he could sit, stand, and walk for an eight-hour workday. Plaintiff never testified that he was bedridden and was not required to do so. As the Ninth Circuit has repeatedly held, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her

overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). That is, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Id.* (citation omitted). The ALJ's finding was therefore in error and, taken together, the ALJ committed harmful error in rejecting Plaintiff's symptom testimony based on less than substantial evidence.

## II. Medical and "Other" Source Opinions.

Plaintiff next argues that the ALJ erred in evaluating the medical and "other" opinion evidence. Pl.'s Br. 14-21. An ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, she must reasonably account for the limitations described in a medical source opinion or "explicitly reject" the opinion based on specific reasons. *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis." *Garrison*, 759 F.3d at 1012–13. Similarly, the opinion of an "other" source, including a nurse or physician assistant, is "competent evidence . . . [that] cannot be disregarded without comment." *Nguyen*, 100 F.3d at 1467. To reject such testimony, an ALJ must "provide reasons germane to each witness." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

To begin, the ALJ erred by failing to credit or obtain a medical source opinion addressing Plaintiff's cervical impairment. It is the ALJ's duty to develop the medical record where "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 543, 460 (9th Cir. 2001). The opinions of Thomas Toal, MD, Martin Kehrli, MD, and Neal Berner, MD were all offered in 2013 and 2014—prior to the onset of Plaintiff's cervical spine-related symptoms and the regression of his thoracic and lumbar

spine impairments. *See* tr. 91-94, 114-19, 347-55. At the administrative hearing, Hugh R. Savage, MD discussed Plaintiff's back impairments, and the ALJ assigned his opinion "partial weight," but Dr. Savage stated that he could not make sense of Plaintiff's cervical problems because he never received medical records post-dating Plaintiff's surgery (i.e., the most relevant records).[5] Tr. 28, 45-58. The only other opinion to consider Plaintiff's cervical impairment, that of treating physician John Allcott, MD, was also based on an incomplete record and concluded that Plaintiff was "disabled." Tr. 555. Although the ALJ offered a valid reason for rejecting Dr. Allcott's opinion—namely that it was brief and addressed the ultimate question of disability rather than specific functional limitations—he was without competent medical testimony on a key impairment and, as discussed in Part I, provided no other valid reason for discounting Plaintiff's corresponding symptom testimony. It was error to simply ignore the cervical impairment when the record evidences that it placed unique limitations on Plaintiff's ability to do basic work activities.

Similarly, the ALJ erred by failing to credit or obtain a medical source opinion addressing Plaintiff's conversion disorder. The only opinions to mention Plaintiff's conversion disorder were, once again, those of Dr. Savage and Dr. Allcott. *See* tr. 45-58, 555. As with Plaintiff's cervical impairment, Dr. Allcott's opinion was based on an incomplete record and, because it offered little more than a conclusory statement on the ultimate question of disability, was properly rejected by the ALJ. Tr. 28-29, 555. Dr. Savage, by contrast, specifically opined that Plaintiff's conversion disorder might explain the discrepancies between Plaintiff's symptom testimony and the objective medical evidence, but he shied away from a definitive conclusion because it was outside his area of expertise and the record before him was incomplete. *See* tr. 28, 45-58. The ALJ was therefore without competent medical testimony on yet another second impairment—this one significantly

---

[5] Even without those portions of the medical record—which detail Plaintiff's worsening pain, weakness, and loss of sensation *after* the surgery—Dr. Savage still labeled Plaintiff's cervical radiculopathy a "severe" impairment. Tr. 46.

Page 10 – OPINION AND ORDER

more complex than the others. In the absence of a relevant medical opinion, it is unclear what role, if any, Plaintiff's conversion disorder might have played in explaining his symptoms.

The ALJ also discounted the "other" source opinions of Christian Marchant, PA-C, and Angie Dahms, FNP because they were based on Plaintiff's own testimony, inconsistent with his activities of daily living, and, with respect to the opinion of Ms. Dahms, contrary to the medical evidence. Tr. 29. That was error. Where, as here, an ALJ has erred in rejecting the subjective symptom testimony of a claimant, she must provide other germane reasons for discounting non-medical source opinions. *See Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009). In so far as the ALJ attempted to do just that, his rationales were not supported by substantial evidence. Plaintiff's activities of daily living, as noted previously, were consistent with his alleged limitations and the limitations assessed by Mr. Marchant and Ms. Dahms were substantially the same as those alleged by Plaintiff. *See* tr. 484-86, 719-22. It was therefore error to find that Plaintiff's activities of daily living were inconsistent with the limitations identified by the "other" sources. The ALJ also failed to explain how the opinion of Ms. Dahms—which focused on Plaintiff's cervical spine-related limitations—was inconsistent with the medical record. Plaintiff's medical records plainly reflect cervical spine conditions and, as explained above, none of the credited medical source opinions address those conditions, let alone call the associated functional limitations into question. Since Mr. Marchant and Ms. Dahms both assessed limitations beyond those contained in the RFC, it was harmful error for the ALJ to reject their opinions.[6]

---

[6] The ALJ also relied on Mr. Marchant's statement that Plaintiff "may be able to work in a job [where] he is sitting and/or not lifting very heavy things regularly." Tr. 486. That statemen, however, was specifically in reference to Mr. Marchant's estimation that Plaintiff's impairments would cause him to miss more than two days of work each month— an estimation which Mr. Marchant wished to qualify. Tr. 486. It was unreasonable for the ALJ to read that statement as negating the specific functional limitations which Mr. Marchant had assessed earlier in his opinion. *See* tr. 484-85.

Page 11 – OPINION AND ORDER

III. Remand for Further Proceedings.

When an ALJ's decision contains harmful legal error, the district court may remand the case for further proceedings or for an immediate award of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). In general, the "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citation omitted). A court should not delay an award of benefits when the record has been fully developed and it is clear that the plaintiff is entitled to benefits. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). At the same time, a claimant is never "entitled to benefits . . . unless [she] is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

The Ninth Circuit has operationalized these considerations with the credit-as-true rule. *Garrison*, 759 F.3d at 1019 (citations omitted). Under that rule, lower courts must engage in a three-part inquiry to determine the proper disposition of a case in which the ALJ has committed harmful legal error. *Id.* at 1020 (citations omitted). First, a court must assess whether the record "has been fully developed" such that "further administrative proceedings would serve no useful purpose." *Id.* Second, if there are no outstanding issues which warrant further proceedings, the court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* Finally, notwithstanding the first two inquiries, a court is still required to remand a case for further proceedings if "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (citation and quotation marks omitted).

The disposition of the present case is straightforward. The ALJ erred in large part by failing to obtain and consider competent medical testimony on the severity of and overlap between

Plaintiff's two primary impairments—his cervical spine conditions and his conversion disorder. The record, as a result, remains inadequate to support a decision on the ultimate question of disability. Moreover, it is unclear whether the underlying physical conditions which gave rise to Plaintiff's cervical-spine related symptoms were remedied by surgery and what role, if any, was played by Plaintiff's conversion disorder. The Court also has serious doubts as to whether Plaintiff's lumbar and thoracic spine impairments, standing alone or in combination with the other impairments considered by the ALJ, meet the threshold for disability. Without medical source opinions evaluating both the physical and psychological geneses of Plaintiff's alleged symptoms, as well as an assessment of Plaintiff's symptom testimony which takes those opinions and the full medical record into account, it is impossible to conclude that Plaintiff is, in fact, disabled.

The Court therefore remands the case with the following instructions:

1. The ALJ will obtain medical expert testimony based on Plaintiff's complete medical records to determine the severity, nature, and limiting effects of Plaintiff's cervical conditions and conversion disorder, both individually and in combination;

2. The ALJ will allow Plaintiff to seek a supplemental opinion from Dr. Allcott and provide appropriate forms or instructions describing how to present that opinion;

3. The ALJ will re-evaluate the medical and "other" source opinions of record;

4. The ALJ will re-evaluate Plaintiff's subjective symptom testimony and, as necessary, adjust Plaintiff's maximum RFC; and

5. The ALJ will re-evaluate steps four and five of the sequential evaluation process and, as necessary, obtain supplemental testimony from a vocational expert;

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED and the case REMANDED for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

IT IS SO ORDERED.

DATED this 28th day of May, 2019.

                                              /s/ Michael J. McShane
                                              Michael J. McShane
                                              United States District Judge